### John McLean et al. v. Samuel G. Gillespie et al.

1. RECEIVER—*when party obtaining, not liable for losses incurred by, while operating plant.* Where the appointment is legal and appears to have been warranted in equity and there comes to the hands of the receiver sufficient funds or property to pay the ordinary costs or expenses, including the compensation of the receiver,

the liability of the complainant, who has acted in good faith, is at an end and he cannot be held liable for any deficiency created in the operation of the property as a business, where he has been guilty of no fraud or collusion, and it does not appear that he has been responsible for the incompetency, dishonesty or reckless management of such receiver.

Bill in chancery. Appeal from the Circuit Court of Montgomery county; the Hon. TRUMAN E. AMES, Judge, presiding. Heard in this court at the May term, 1906. Reversed and remanded. Opinion filed June 8, 1906. Rehearing denied January 8, 1907.

Statement by the Court. On November 23, 1904, a decree in chancery was entered by the Circuit Court of Montgomery county, requiring appellants to pay into the hands of a special master, for the benefit of appellees and others, the sum of $9,224.28, together with certain interest and costs. To reverse such decree this appeal is prosecuted. The facts necessary to an understanding of the issues involved are substantially as follows: Several years prior to 1892, appellants and others, all of whom are farmers, organized a corporation called the Coffeen Coal & Copper Co., for the purpose of mining and selling coal. The principal office of the corporation was at Coffeen, Illinois, at which place the coal shaft operated by it was located. On December 20, 1892, said company issued its promissory notes aggregating the sum of $20,000, which were secured by a mortgage upon all of its property and by the guarantee of eleven of its stockholders, including appellants. On November 30, 1894, upon the petition of certain judgment creditors of the corporation, one Mills was appointed receiver of its property. He continued to act until January 20, 1898, when one Chipman, was appointed as his successor. On January 9, 1899, by virtue of a decree of foreclosure under said mortgage, the property covered thereby was sold by the master in chancery and a certificate issued to the purchaser, appellant Duncan McLean, who was acting in the matter for himself, W. S. Barry, William Harvey and appellant John McLean.

The balance due upon the mortgage over and above the amount realized at the foreclosure sale was paid by appellants. On February 1, 1899, Chipman resigned as receiver, and upon the petition of appellant Duncan McLean, the holder of the certificate of purchase, for a receiver, said W. S. Barry was appointed and qualified. By the order of appointment, in addition to the usual powers, the receiver was authorized to operate the mine, employ necessary labor, and to pay the costs and expenses out of the earnings of the mine. July 29, 1899, the owners of the certificate of purchase as aforesaid, without obtaining from the court authority to do so, entered into a written agreement with one Westrich, which provided that said Westrich was to have possession of the property for five years from August 1, 1899, at a monthly rental of $300, together with all taxes and insurance. It was further provided that in case Westrich should pay certain specified indebtedness of the corporation, aggregating the sum of $12,649.37, and the property was not redeemed within the statutory period, he should become the owner of the property, but that should a redemption be made, the owners of the certificate should pay to Westrich a reasonable sum for his services, together with the amount paid by him in discharge of the specified indebtedness. The collectible accounts due for coal sold, amounting to $5,234.28, were turned over to him. He took possession of the mine and operated the same in the name of Barry as receiver, for eleven months, paying to Barry as receiver, as rent the sum of $3,300, which was equally divided by Barry between appellants, Harvey and himself. The business, while conducted by Westrich, proved to be unprofitable by reason whereof a large additional indebtedness was incurred in the name of Barry as receiver.

In April, 1901, the entire property was sold by the master to appellee Gillespie, under a decree rendered upon the petition of Barry as receiver, for the purpose of paying such indebtedness, for the sum of

$4,469.60. The proceeds were afterward applied in part satisfaction of the claims of creditors of the receiver, who were found to be such by the decree hereinafter mentioned.

Barry made no report as receiver from the time of his appointment until the summer of 1901, at which time he filed a report, which the court refused to approve. The cause was then heard upon such report, and upon the petition of a number of the creditors of Barry as receiver, who had filed their respective claims for adjudication and adjustment. Upon October 3, 1901, the court entered a final decree, finding, in addition to the foregoing facts, that the indebtedness incurred in operating the mine and remaining unpaid was $11,841; that Barry and appellants McLean were jointly and severally liable to pay the same; that Barry had paid thereon $1,587.97, leaving $9,273.03 unpaid; that execution was issued against Barry and returned "no property found;" that when Barry was appointed receiver the court was not advised that he owned one-fourth of. the equity of redemption in the. property; that he was not appointed to pay the creditors but to convert the property to the use of Barry, McLean and Harvey and defeat creditors; that Gillespie's claim for $2,655 should be allowed; that the said contract with Westrich was fraudulent; that Westrich had paid $300 per month for eleven months, in all $3,300, to Barry, Harvey and appellants, which should have been paid to the receiver; that Barry had sold coal for less than its value, failed to account for money received, and was guilty of gross mismanagement; that appellants, who procured his appointment, were privies to such action and conduct, and were liable for the same, and that they were liable for the further reason that Barry was receiver of his own property jointly with John McLean, Duncan McLean and William Harvey; and further that said Harvey had died insolvent.

In restating the account of the receiver, the court

charged him with the item of $3,300 which he had collected from Westrich as rent for the mine, and also with amounts received from sale of coal, etc., and with the market price of coal which he had sold at a less price, and gave him credit for the amounts paid by him for operating expenses and on account of indebtedness, and then found that he was liable as receiver for the sum of $1,587.97, which he ordered him to pay to the special master. Subsequently one of his sureties paid the same to the master. The court further found that Barry was personally liable for the indebtedness of the receivership in the sum of $9,253.03, and ordered him to pay the same and made it a lien upon his real estate. The court also held that appellants were jointly and severally liable with Barry, but found that as they were not in court no decree could be entered against them.

On October 2, 1902, appellee Gillespie filed a petition in said cause, in behalf of himself and all other creditors of the corporation who might wish to join, which, with amendments thereto, recites in full the foregoing decree of October 3, 1901; avers that petitioner is a creditor to the amount of $2,655, and prays that appellants may be made parties to said decree; that summons may be issued as to them, and that decree may be entered against them requiring them to pay the sum of $9,224.28 to the creditors of said corporation. Summons was accordingly issued against appellants and on October 23, 1902, returned served. The abstract shows that a demurrer was filed to said petition, but fails to show any ruling thereon by the court. On April 28, 1903, appellees Edwards and the Springfield Coal Supply Company filed an intervening petition alleging the facts set up in Gillespie's petition, that the same were true, and that they had claims against the coal company, the former for $913.90 and the latter for $1,863.90, and prayed that appellants be decreed to pay the same. Appellants filed their answer to said petitions June 30, 1903, denying that they procured the

appointment of Barry as receiver or that they were privies to his conduct, or were liable with him to appellees, and denying the right of appellees to the relief prayed. A hearing was had upon the petitions at which the decree of April, 1901, was offered in evidence by petitioners and admitted without objection. On November 23, 1904, a decree was entered against appellants, in accordance with the prayer of said petitions, directing them to pay to the special master the sum of $9,224.28, with interest from October 3, 1901, in satisfaction of the claims of petitioners and the other creditors whose names and the amounts due them respectively are specified in the original decree.

AMOS MILLER, for appellants.

JETT & KINDER and LANE & COOPER, for appellees.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

The principal question presented for our determination is, whether or not appellants are legally liable for the losses incurred by the receiver Barry in the operation of the mine? It is conceded that all persons contracting with a receiver have a right to look to the income first, and second to the *rem*, the fund or property *ingremio legis*, backed by a pledge of the court that it shall be liable for all costs and expenses legitimately incurred in pursuance of its orders. It is also conceded that where a receivership is procured under the assertion of an unjust or wrongful claim as finally found by the court, or where the appointment of the receiver is without authority of law, the complainant is liable to pay the receiver's charges and disbursements as a part of the costs in the case. Machinery Co. v. Hughes, 195 Ill. 413.

Appellees, however, contend that where both the income and the *corpus* of the property in the hands of a receiver, is insufficient for the purpose, then the

parties in whose interest the receiver was appointed are liable, not only for all costs and expenses, but for any indebtedness contracted by him in operating the property as well, and that the same becomes a personal debt of such parties. Appellants, on the contrary, contend that inasmuch as all persons contracting with a receiver are presumed to know the law and have notice of the value of the property in his hands, and that there is no other property or fund out of which it can be paid, if they extend him credit, they do it at their peril.

The exact question presented does not appear to have been expressly decided by the courts of this state. In Myers v. Frankenthal, 55 App. 390, the receiver was appointed without any probable cause, and it was held that the party at whose instance the appointment was made should pay all expenses. To the same effect are the cases of Einstein v. Lewis, 54 App. 520, McAnrow v. Martin, 183 Ill. 467, and Highley v. Deane, 64 App. 389, affirmed in 168 Ill. 266.

In Knickerbocker v. Coal Co., 67 App. 291, the Appellate Court held that while the estate in the receiver's hands is the primary fund out of which his proper expenses and compensation are to be paid, if the estate be insufficient or fail, the parties for whom he is acting may be compelled to pay the expenses incurred for their benefit, and further that the obligations of the receiver in that case, which were incurred in running a hotel belonging to the parties in whose interest the receiver was appointed and acted, were the obligations of those who procured his appointment; the opinion fails to distinguish between cases where the receiver is or is not properly appointed. Upon appeal the Supreme Court (172 Ill. 535) held merely that where equity takes charge of property through a receiver, the property becomes charged with the necessary expenses incurred in taking care of it, and the court may keep matters under its control until such expenses have been paid or secured; and further that

the court may make such expenses a charge upon the property provided the income therefrom is not sufficient to pay them.

In Hammons v. Giles, 3 Wash. Terr. 117, it was held that the court should not appoint a receiver over property which is of no more value than liens thereon; that if, however, the complainant holder of the liens had such receiver appointed or consented to his appointment, the costs of the receiver should be taxed against the complainant and he should be compelled to pay them.

In Farmers' National Bank v. Backus, 74 Minn. 267, it is said: "The second proposition is that a receiver being an officer of court subject to its control, and not that of the party asking for an appointment, his fees and expenses are chargeable solely against the funds which come into his hands as receiver. The parties to the action are not personally liable therefor unless they have given bond or contract to pay them as a condition of the appointment or continuance of the receivership. This may be conceded to be correct as a general rule, but there are cases where the court will, if the funds in court be insufficient to give the receiver reasonable compensation and indemnity, require the parties at whose instance he is placed in possession of the property to pay them."

In Tome v. King, 64 Md. 166, the receivers were appointed solely at the instance and for the benefit of second mortgage bondholders and the property involved was sold, under order of court, exclusively for their benefit and not for the benefit of the first mortgage bondholders, who were not made parties to the proceeding, and subject to their rights. The proceeds of the sale were insufficient to defray the expenses and compensation of the receivers. It was held that the first mortgage bondholders could not be required to pay any part of the deficiency but that the parties at whose instance the receivers were appointed should be required to provide the means of payment.

In Howe v. Jones, 66 Iowa, 156, it was held that where a receiver was appointed to take charge of certain property, but in an action of intervention by third parties, it was found that the property belonged to them and they were in no way benefited by the appointment or action of the receiver, it was held that it was error to allow the receiver to retain a portion of the proceeds of the property in payment for his services and expenses, but that in such case he must look for his compensation to the party who secured his appointment.

In French v. Gifford, 31 Iowa, 428, it was held that the rule that the compensation of a receiver should be retained from and paid out of funds coming into his hands, generally applies only where the receiver closes up the business and closes his accounts in pursuance of his appointment, and not where the order appointing the receiver is set aside as improperly made before such time.

In Moyers v. Coiner, 22 Fla. 422, it is held that where a receiver is appointed on application of the complainant in the bill and the allegations in the bill are insufficient to warrant the appointment and the receiver is continued after a motion by the defendant to vacate the order appointing him, the costs occasioned by such appointment should be paid by the complainant.

In Beach on Receivers, sec. 773, it is said: "But it may sometimes happen that a direct liability is imposed upon the parties to the action or upon some of them for the remuneration of the receiver. This may result from the irregularity of the appointment or from the insufficiency of the fund or of the agreement of the parties." Again, at sec. 774, the same author says: "The rule that the compensation of a receiver is a charge upon the funds in his hands has been held not to apply without qualifications to the case where the appointment was irregular and is vacated."

In the case of Farmers' Loan & Trust Co. v. Ore-

gon P. R. Co., 31 Ore. 237, the court in discussing this question said:

"It is not perceived upon what ground it can be claimed that because the expenses of the receivership are allowed without any fault of his (complainant's) to exceed the value of the mortgaged property, thus entirely destroying his security, he must in addition to the loss of his debt, be compelled to make good the deficit, unless the order of appointment was made upon that condition. He has no control over the acts of the receiver, and if, without his consent, he is to be held responsible therefor, he is liable to absolute bankruptcy and ruin. Such a rule would render the plaintiff's position so uncertain and precarious as practically to preclude him from any protection whatever through the appointment of a receiver pending the foreclosure suit. But the inquiry is made, shall not the railroad mortgagee who applies for and obtains the appointment of a receiver with authority to operate the road, be held responsible for the liabilities incurred by such officer when they cannot be made out of the property itself? We think not, unless such responsibility was imposed as a condition of the appointment or the continuance of the receiver in office. The appointment of a receiver in a suit to foreclose a railroad mortgage is not a matter of strict right but rests in the sound judicial discretion of the court, and it may, as a condition to issuing the necessary order, impose such terms as may, under the circumstances of the particular case, appear to be reasonable, and if not acceded to, may refuse to make the order. * * * If, therefore, upon the application for the appointment of a railroad receiver, it appears probable that the income and *corpus* will prove insufficient to pay the expenses and liabilities thereof, we have no doubt that the court may require of the plaintiff, as a condition to such appointment, the guarantee of the payment of the expenses of such officer. And if at any time after the appointment

had been made, it becomes apparent to the court that it will be unable to pay and discharge the present or future liabilities incurred by its executive officer and manager, it should refuse to continue the operation of the road under the receiver, unless its expenses are guaranteed. No court is bound or ought to engage in the operation of a railroad or any other enterprise without the ability to promptly discharge its obligations, and unless it can do so, it should keep out or immediately go out of the business. But unless such terms are imposed as a condition of the appointment or continuation in office of the receiver, his employes must look to the property in the custody of the court and its income for their compensation. They have no claim whatever upon any of the parties to the litigation. They are the employes and servants of the court and not of the parties. Their wages are in no sense costs of the litigation, and although incurred during the progress of the suit, they are not incurred in the suit. They are neither expenses of the plaintiff nor of the defendant, and are not fees or costs which can be charged against the successful party to the litigation, as is sought to be done in this case.''

The following cases seem to support appellees' position: In Welch v. Renshaw, 59 Pac. Rep. (Col.) 967, the complainants secured the appointment of a receiver in an action for the dissolution of a partnership, the only asset of which was a mining lease which was terminable unless the mine was operated. The mine was operated by such receiver at a loss and was finally surrendered to the lessors. The court held that inasmuch as complainants had not objected to the receiver's reports which showed such loss, and the receiver was appointed and empowered at their specific instance and request, there being no fund or property left out of which it could be paid, it would be inequitable to say that the indebtedness, which was largely due for labor, should not be borne by complainants. The deficiency was, therefore, taxed against them.

In Chapman v. Atlantic Trust Co., 119 Fed. Rep. 257, it was held that where the cost and expenses of the management of a mortgaged property by the receiver authorized by the court exceed the proceeds of the property when sold, together with its earnings, and the court has especially retained jurisdiction over the subject-matter and the parties until the final settlement of the receiver's accounts, it has power on such settlement to render judgment on the deficiency against complainant at whose instance the receiver was appointed and continued and the expenses were incurred. In its opinion the court says: "The party who asks for the appointment of a receiver does so voluntarily and because he thinks it to his interest to have the possession of the property in controversy pass into the hands and control of the court pending litigation. It is true that the receiver when appointed becomes an officer of the court and not the agent of either party to the suit, but he is appointed to serve the party interested. He holds the property and when operating it operates it for the benefit of whosoever shall be finally adjudged to own it, but he cannot be justly held to operate it at his own expense or that of the court."

It is doubtless true that in cases where the appointment of a receiver is improperly procured or there existed no probable cause or equitable grounds for the appointment, or where no funds or property comes into the receiver's hands out of which the taxable costs and expenses of the proceeding, including the receiver's compensation, can be paid, the complainant, at whose instance the receiver was appointed, should, in equity, be compelled to pay the same. We are of opinion, however, that where the appointment is legal and proves to have been warranted in equity, and there comes to the hands of the receiver sufficient funds or property to pay the ordinary costs and expenses, including the compensation of the receiver, the liability of a complainant who has acted in good faith, is at an end, and that he cannot be held liable for any deficiency

created in the operation of the property as a business. The appointment of a receiver is a matter largely discretionary with the court, especially so as to the fitness of the person appointed. By his appointment, a receiver becomes an officer of the court, subject only to its orders and directions. He is presumably indifferent between the parties in interest and acting to the best interests of all. The court only can call him to account, require him to report his acts and doings, and if he is incompetent or unfaithful to his trust, remove him. Under these circumstances to hold a complainant, in the absence of fraud or collusion on his part, responsible for the incompetency, dishonesty or reckless management of a receiver solely because he has been appointed upon the application of such complainant, would be unjust, inequitable and unjustifiable either in principle or by legal authority.

The mere fact that a business enterprise is being conducted by an officer of and under the direction of a court of equity, does not, in our opinion, place the business upon a different plane from an ordinary business so far as security of creditors of the receiver are concerned. Such creditors have far superior opportunities to determine the exact resources and assets out of which they can expect payment than they have in ordinary business transactions. The inventory and reports of the receiver are open to the inspection of all parties interested, and creditors can extend or refuse credit accordingly. If, as we are inclined to hold, it is the law that creditors of a receiver can look only to the assets in his hands, persons dealing with him as such are presumed to know that fact and govern themselves accordingly. If they extend credit it is at their peril. If a person by procuring the appointment of a receiver in good faith and in a proper case, thereby pledges his personal credit to the performance and success of all the receiver's undertakings, few, if any, would consent to assume the responsibility. Property, especially of the kind here involved, would frequently be per-

mitted to greatly depreciate in value because of the reluctance of the interested parties to assume the initiative, and the consequent responsibility.

From an examination and consideration of all the authorities to which our attention has been called, and notwithstanding the seeming conflict, we are led to the conclusion that unless the appointment of Barry as receiver in the case at bar, was either illegal or improper, or unless the deficiency in the operation of the mine was created by or was the result of gross negligence and mismanagement of the property by the receiver, and that appellants were privies to such acts and misconduct on the part of the receiver, they cannot be held responsible for the same.

It cannot be successfully urged that the appointment of a receiver was unwarranted under the existing circumstances. Nor can it be said that the appointment was solely in the interest of and for the benefit of appellants. In theory, at least, the purpose of such appointment was to protect and preserve the property for the benefit not only of appellants, but the mortgagor corporation, its creditors, if any, and in short all concerned. And this is true without regard to whether the probability of redemption was remote or otherwise. That a receiver was essential for the preservation of the property in question is not controverted.

The decree of October 3, 1901, finds that appellants, together with Harvey and Barry, just prior to the sale of the mine under the foreclosure decree agreed between themselves that appellant, Duncan McLean, should purchase the mine at such sale for $17,000 in their joint interest, that the certificate of purchase should be taken in Duncan's name, and that he should then secure the appointment of Barry as receiver. It further finds that Barry was appointed in pursuance of such agreement on the petition of Duncan McLean. There is no finding that either appellants, Harvey or

Barry represented to the court that Barry was disinterested. It is urged and argued that as a result of said agreement, and in ignorance thereof or that Barry was interested, the court appointed him receiver, and, in effect, allowed him a salary for taking care of his own property in contravention of public policy; that except under such circumstances as in partnership cases in some instances, a party to the cause will not ordinarily be appointed a receiver without the consent of the other party (High on Receivers, sec. 70), and the general rule in such cases is against the allowance of any compensation. We regard the findings of the decree in this respect as insufficient to warrant the finding that appellants are personally liable for the deficiency. The mere fact that Barry is interested in the property did not, of itself, disqualify him from acting. There were, at the time, no antagonistic interests. All were alike concerned in preserving the property and disposing of it to advantage.

While the failure of the receiver to report his acts and doings as provided by his order of appointment constituted a violation of duty on the part of the receiver, we do not understand that the mere failure of appellants to enforce the performance of such duty would render them liable for the consequences. Nor can it be said that the lease or contingent sale by appellants and Harvey and Barry, of their interest in the certificate of purchase to Westrich, was unlawful or in any way injurious or prejudicial to appellee. Appellants and their associates did not by virtue of the certificate of purchase, become the owners of the property as no title passed thereby. They simply acquired the right to a conveyance of the title in case there was no redemption and they had the legal right to sell such interest if they desired.

The decree, however, further finds that appellants and their associates during the pendency of the receivership entered into a written contract with one Westrich, under and by which Westrich was, without

the knowledge or authority of the court, permitted to take possession of and operate the mine in the name of Barry, as receiver, for the period of eleven months; that in conduct of the business by Westrich a large indebtedness was incurred in the name of Barry, as receiver. The arrangement in question was clearly and solely in the interest of and for the benefit of appellants and their associates. That the act of the receiver in relinquishing the possession and control of the property to Westrich was wrongful and illegal, and that appellants were privies thereto, is too manifest to require discussion. We are therefore of opinion that appellants are liable in equity for the losses incurred by Westrich in his operation of the mine.

By the decree appellants are improperly found to be liable for whatever remained unpaid of the indebtedness incurred by Barry during the entire term of his receivership, less the proceeds of the sale of the property by the special commissioner. In the light of the foregoing views their liability should be limited to the losses incurred by Westrich while he was assuming to act in the name of Barry as receiver, but was in fact operating the property for the sole benefit of appellants, Barry and Harvey.

The decree will be reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*