(No. 41306.—

COMMUNITY RENEWAL FOUNDATION, INC., Appellee, *vs.*
CHICAGO TITLE AND TRUST COMPANY, Appellant.

*Opinion filed January 28, 1970.*

285

Sonnenschein, Levinson, Carlin, Nath & Rosenthal, of Chicago, (Frank C. Bernard and Edwin A. Rothschild, of counsel,) for appellant.

Winston, Strawn, Smith & Patterson, of Chicago, (Calvin Sawyier, Robert B. Golding, and Peter O. Fetzer, of counsel,) for appellee.

Raymond F. Simon, Corporation Counsel, of Chicago, Allen Hartman and Daniel Pascale, Assistant Corporation Counsel, of counsel,) for *amicus curiae,* City of Chicago.

Spray, Price, Hough & Cushman, of Chicago, (James A. Broderick, of counsel, for *amicus curiae,* Metropolitan Housing and Planning Council.

Mr. JUSTICE WARD delivered the opinion of the court:

Irving Gerick, who preceded the appellee, Community Renewal Foundation, Inc., as receiver of premises located in Chicago, brought an action against the Chicago Title and Trust Company, the appellant, for specific performance of a contract to purchase certificates which Gerick, as receiver, had been authorized to issue. A motion to dismiss the complaint filed by the appellant alleged that the receiver had failed to perform a condition precedent to the duty of the appellant to perform and, further, that the receiver could not perform the condition, *viz.,* have the receivership certificates judged to be a first lien upon the concerned real estate and its rents superior to all prior existing liens and encumbrances. Specifically, the motion contended that section 11—31—2 of the Illinois Municipal Code, (Ill. Rev. Stat. 1967, ch. 24, par. 11—31—2) which authorized the issuance of receivership certificates which would become a first lien on concerned real estate and the rents and issues of it was unconstitutional. The statute, it was said, 1) improperly impaired obligation of contract; 2) violated rights to due process; and 3) purported improperly to amend another statute by implication. Alternatively, the appellant's motion argued, the orders of the circuit court authorizing the issuance of the receiver's certificates were void for failure sufficiently to comply with the referred-to section of the Illinois Municipal Code. The motion to dismiss was denied by the circuit court of Cook County and upon the appellant's failure to file additional pleadings the court entered judgment against the appellant, directing specific performance. The appeal was taken directly to this court, since it involves the constitutionality of a statute.

The background to the controversy was formed in November 1964 when the city of Chicago filed a complaint in the circuit court of Cook County against the owner of certain premises in Chicago. In it the city requested that the court, after a hearing, appoint a receiver to manage the

premises because of numerous and continuing violations of zoning, building, housing, electrical, health and fire ordinances of the city of Chicago. The city asserted that the acting commissioner of buildings of the city of Chicago had caused numerous inspections of the premises to be made and had sent repeated notices to the owner regarding the ordinance violations and that the commissioner had been informed that the violations would not be corrected by the owner. The complaint set forth that the condition of the premises was injurious to the health, safety, and general welfare of the public and that there was no adequate remedy at law available to the city to require the owner to comply with provisions of the ordinances. The city requested the appointment of a receiver to make the repairs and alterations necessary to bring the building into compliance with the ordinances and asked that the receiver be empowered to issue receiver's certificates authorized under the Illinois Municipal Code if the income to be received from the premises was found to be insufficient to permit the repair of the premises within a reasonably short time. The city further asked that the court provide that the certificates when issued be considered as a lien on the premises superior to other liens except taxes.

The court entered an order on February 18, 1965, finding the premises to be dangerous, unsafe and hazardous as a result of the owner's failure to comply with the minimum standards of health and safety provided in the city ordinances and that ordinary remedies at law were inadequate. The court appointed Irving Gerick as a receiver of the premises and directed that the receiver should have the same powers and duties as all other receivers in chancery and, in addition, certain other powers, including the authority, following a court-approved application, to encumber the premises for the purpose of obtaining funds to permit necessary repairs and alterations. Submitted plans for the repair and rehabilitation of the premises were approved by the court

on July 15, 1965, and the receiver was authorized to seek bids for the proposed work.

The court found on September 10, 1965, that the rents from the property were not sufficient to permit the repair and rehabilitation of the property. A construction bid for the repair and rehabilitation of the premises as a single family home was approved and the receiver was authorized to borrow the required funds in an amount not to exceed $30,000 and to secure the lender or lenders with a first lien on the real estate as well as on the rents and other issues from the premises.

The court later approved a contract for the rehabilitation of the premises. It found that the value of the premises, including land and buildings, was $25,000, and that the expenditure of $30,000 for the proposed rehabilitation would increase the value to not less than $50,000. The receiver was authorized by the court to execute an agreement for the sale to the appellant of receiver's certificates to finance the cost of this rehabilitation. The order also authorized the receiver to execute a lease after the rehabilitation of the premises for a term of 12 years.

Thereafter, the receiver, Irving Gerick, pursuant to this order, entered into a written contract with the appellant for the sale of certificates in an aggregate amount of $30,000. The contract provided that the obligation of the purchaser was to be upon the express condition that the receiver's certificates would be, subject to the filing of a proper notice of lien within sixty (60) days, first liens upon the real estate, rents and issues superior to all assignments of rents and all prior existing liens except general real-estate taxes for the year 1965 and subsequent years. Under the terms of the contract delivery of the certificates and payment of the purchase price was to take place on August 10, 1966. On that date the appellant refused to purchase the certificates on the ground that the certificates would not constitute a valid first lien.

The appellant first complains that section 11—31—2, as amended, impairs the obligation of contracts because the prior lien status, to be given to the lien of the receivership certificates issued pursuant to the statute, would diminish or destroy the rights of existing lienholders. This change in the position and rights of lienholders by the operation of the statute, the appellant argues, renders it unconstitutional.

The pertinent provisions of the statute provide: "If, upon application hereunder, the court orders the appointment of a receiver to cause such building or structure to conform, such receiver may use the rents and issues of such property toward repair and rehabilitation of the property prior to and despite any assignment of rents; and the court may further authorize the receiver to recover the cost of such repair and rehabilitation by the issuance and sale of notes or receiver's certificates bearing such interest as the court may fix, and such notes or certificates, after their initial issuance and transfer by the receiver, shall be freely transferable and when sold or transferred by the receiver in return for a valuable consideration in money, material, labor or services, shall be a first lien upon the real estate and the rents and issues thereof, and shall be superior to all prior assignments of rents and all prior existing liens and encumbrances, except taxes; provided, that within 60 days of such sale or transfer for value by the receiver of such note or certificate, the holder thereof shall file notice of lien in the office of the recorder of deeds in the county in which the real estate is located, or in the office of the registrar of titles of such county if the real estate affected is registered under the Torrens system." Ill. Rev. Stat. 1967, ch. 24, par. 11—31—2.

Thus, the statute specifically provides that if the court orders the appointment of a receiver and authorizes him to issue and sell certificates to defray the cost of rehabilitation the certificates shall constitute a first lien on the real estate and the rents and issues of it. It is this authorization to the

receiver that the appellant claims infringes the constitutional assurance against the impairment of contracts.

It is appropriate to observe that the contract clause of the Federal constitution is not to be considered an absolute restriction or prohibition against the affecting of contracts and that the clause recognizes that they may be subject to the reasonable and legitimate exercise of the police power of the State. (See *Home Building & Loan Ass'n* v. *Blaisdell*, 290 U.S. 398, 447, 78 L. Ed. 413, 54 S. Ct. 231.) Where the State properly exercises this power for the general welfare, even though contracts and rights established by them are affected by its action, the exercise of this power is not an unconstitutional infringement of the contract clause. Such an exercise of police power will be considered superior to rights created under a contract between individuals. *East New York Savings Bank* v. *Hahn*, 326 U.S. 230, 90 L. Ed. 34, 66 S. Ct. 69; *Home Building & Loan Ass'n* v. *Blaisdell*, 290 U.S. 398; *City of Chicago* v. *Chicago and North Western Ry. Co.*, 4 Ill.2d 307; and *Vissering Mercantile Co.* v. *Annunzio*, 1 Ill.2d 108.

The appellant mistakenly considers that the statute grants the court the power to appoint a receiver as well as granting the authority to have the certificates considered a first lien, but a reading of section 11—31—2 of the Municipal Code (Ill. Rev. Stat. 1967, ch. 24, par. 11—31—2) discloses no provision for the appointment of a receiver under the statute. The legislature recognized the inherent power of a court of equity to appoint a receiver and from this inferentially stated that a court of equity could reasonably find the appointment of a receiver appropriate in a situation, as here, where property has become unfit for use and dangerous because of continuing building code violations. Only after the court has appointed a receiver and determined that it should authorize the issuance of receiver's certificates does the statute direct that these certificates will be a first lien on the real estate.

Therefore, the questions presented here are whether this inherent power of a court of equity to appoint receivers extends to a case such as this and whether the statutory provision that the issuance of certificates by such a receiver shall be a first lien on the real estate is a reasonable exercise of the police power.

We regard the appointment of a receiver to obtain compliance with the building codes, where because of continuing violations the property has become unsafe and a danger to the community, as within the inherent powers of an equity court. (See 45 Am. Jur., Receivers, 830-32, 842; Clark, Law of Receivers, § 46.) Too, the providing of adequate housing accommodations is a problem of first importance and urgency for the cities. The appointment of a receiver when necessary to preserve and restore residential property is also obviously in the public interest and under circumstances appearing here was an appropriate exercise of a court's equity powers. Clark, Law of Receivers, § 49; 45 Am. Jur., Receivers, 830 *et seq.;* 75 C.J.S., Receivers, 3 *et seq.* : see also Enforcement of Municipal Housing Codes, 78 Harv. L. Rev. 801, 826 (1965).

We also consider that the provision of section 11—31—2 that receivership certificates, when issued, will be regarded as prior liens on rents and profits as well as the real estate concerned is a valid exercise of the police power. There can be no doubt that the legislature was aware of the plight of the cities in their efforts to provide sufficient and suitable housing, particularly for lower income groups, and considered it was confronted with an emergency. (See Enforcement of Municipal Housing Codes, 78 Harv. L. Rev. 801 (1965) ; Levi, Focal Leverage Points in Problems Relating to Real Property, 66 Colum. L. Rev. 27 (1966) ; Urban Renewal, 72 Harv. L. Rev. 504 (1959).) It is clear that the legislature conferred this preferred status on receivership certificates to enhance their marketability and to encourage thereby the rehabilitation of deteriorated housing. We can-

not say the action taken was ill-considered and unreasonable.

While the New York Court of Appeals in *In re Department of Buildings of City of New York*, 14 N.Y.2d 291, 200 N.E.2d 432, considered the constitutionality of a prior lien as to rents and profits only, under a statute similar to the one here examined, the expression of that court is pertinent. It observed (200 N.E.2d at p. 439) that: "When weighed against the vital public purposes sought to be achieved, the interference with the mortgagee's rights resulting from the present law may not be said to be so unreasonable or oppressive as to preclude the State's exercise of its police power. It is worth remarking that, if the mortgagee's lien may not be subordinated to the extent provided—that is, by postponing his right to collect rents from the property or to effect a discharge of the receiver until the cost incurred by the receiver (on behalf of the municipality) in removing the dangerous conditions has been repaid—the result would be that the State must permit slum conditions to continue unabated, or, alternatively, either condemn unsafe buildings and thereby aggravate the acute housing shortage or continue making improvements with, however, only a lien subordinate to previously recorded mortgages. To insist upon the last course not only would result in a gratuitous addition to the security of prior encumbrances but would undoubtedly render the operation financially impossible." (The New York Multiple Dwelling Law now provides that the lien imposed under the act has priority over all other mortgages, liens and encumbrances of record except taxes and assessments. See Multiple Dwelling Law of New York, § 309, subd. 5, par. e, amended L. 1965, ch. 144, § 2.)

That our statute extends the certificates' lien beyond the "rents and issues" to the real-estate equity does not make our legislation unreasonable. If a program to rehabilitate substandard housing is to have the effect intended by its

designers it is, under existing conditions, necessary that the receiver's certificates be marketable so that rehabilitation can be financed. (See Enforcement of Municipal Housing Codes, 78 Harv. L. Rev. 801, 828; Levi, Focal Leverage Points in Problems Relating to Real Property, 66 Colum. L. Rev. 275, 280; Urban Renewal, 72 Harv. L. Rev. 504, 548.) The imposition of a first lien on the equity of the real estate impresses us as being a reasonable means to make the certificates marketable and the rehabilitation of concerned housing feasible. We judge it constitutes a legitimate exercise of the police power. See Conn. Gen. Stat. annotated, § 19-347 B (1955), and Indiana Statutes annotated, § 48-6144 (1969) which provide for a first lien on property which has been repaired pursuant to the statute.

It is argued, too, by the appellant that the statute here represents an unreasonable exercise of the legislative power because the benefit to the public is disproportionate to the hardships imposed on owners and lienholders. The contention is that the imposition of a prior lien is authorized any time there is a nonconformance, however minor, with a minimum standard of health and safety as established in a city ordinance or in the standards of an urban renewal plan. However, we do not believe that such an interpretation of the statute can be admitted.

We consider that the statute is primarily intended as a means of salvaging a housing unit which still has economic life if properly repaired, but which because of the neglect of the owner has deteriorated to such an extent that it is unsuitable for habitation. Such a unit, in some cases, at least, might properly be demolished, but, for the public welfare the legislature has expressed an interest in preserving such a housing unit which, if repaired, can serve housing needs. The court must determine that the housing unit being considered by it is appropriate for rehabilitation under the statute and that rehabilitation of the unit is what is called for before it authorizes the financing of the costs of repair

by the issuance of receiver's certificates. See Enforcement of Housing Codes, 78 Harv. L. Rev. 801, 828, 829; Urban Renewal, 72 Harv. L. Rev. 504, 548.

The appellant points out that plans under the Urban Community Conservation Act (Ill. Rev. Stat. 1967, ch. 67½, par. 91.8 *et seq.*) may include provisions for landscaping, off-street parking and other improvements beyond the requirements of minimum standards of health and safety. He observes, too, that under the statute we consider here, a building affected by such a plan can be required to "conform to the standards and provisions" of such a plan.

The appellant argues from this that it is possible that an application of the statute in a particular case might allow a "conservation plan" enacted under the Urban Community Conservation Act to be enforced at the request of a municipality so as to constitute a taking of the building owner's property without compensation. That is, the owner might be burdened under a given application of the statute with the expense of conforming his building to a conservation plan, though the public authority could not legitimately seek such conforming under its police power, as in the supposed case, neither public health nor safety would require it. However, this question is not present under the facts of this case. Too, such contingency would arise only if one supposes that a court would interpret the statute to permit what would amount to a taking of property without compensation. It is unnecessary here to assume such an interpretation.

We are unpersuaded by the argument that the statute is defective in that it fails to establish standards of guidance and restriction for an administrative official, *viz.,* an appropriate official of any municipality, in determining whether conditions which prevail in a given case will warrant the appointment of a receiver and the issuance of receivership certificates. The answer to this is simply that the statute does not contemplate that such a determination will be administratively reached. A municipal official is author-

ized only to address the court for relief. It is the court which is to make the determination of the form of relief, if any, which is to be granted. See *City of Decatur* v. *Kushner,* 43 Ill.2d 334.

The appellant also parenthetically complains that the statute is not clear regarding the rights of mortgagees. However, we consider that the statute contemplates that the rights of mortgagees will be properly safeguarded by the observance of requirements of notice to such persons and by the other normally followed due-process procedures. See Clark, *Law of Receivers,* sec. 46 and sec. 47, *cf. City of Chicago* v. *934 Willow Building Corp.,* 36 Ill. App. 2d 72.

Another contention of error is that certain amendments of section 11—31—2, which added paragraphs two and four to the section, purport to amend the Urban Community Conservation Act (Ill. Rev. Stat. 67½, pars. 91.8-91.16) in violation of section 13 of article IV of the Illinois constitution. There the constitution states that no law shall be amended by reference to its title only but that the amended section shall be fully set forth in the new act. We do not, however, perceive that the legislature sought to amend the Urban Conservation Act by the amendments made to section 11—31—2, either directly or by implication. We believe the appellee correctly observes that the reference to the Urban Community Conservation Act by the legislature was only to identify other standards, which, if not complied with, might furnish a basis for equitable relief.

It is said by the appellant that even if the validity of the statute is assumed for argument's sake, the orders of the court which authorized the issuance of certificates were void.

The principal ground for this position is that under the statute, the appellant argues, the court could order a receiver only to "cause [the] building or structure to conform" to the minimum standards of health and safety appearing in the pertinent Chicago ordinance or to the standards of a

conservation plan under the Urban Community Conservation Act, depending on which, the ordinance or the conservation plan, was applicable. The appellant says this means that the court's authority was limited to the ordering of only those repairs which would cause the building concerned to satisfy minimal requirements under the ordinance or plan. He argues that no improvement beyond this could be authorized, and that the order of the court should have specifically limited the rehabilitation. However, we do not believe that this narrow and restrictive interpretation is required, when one considers, as we do, the intendment of the legislature to be that deteriorated buildings be returned to economic life and acceptable usefulness. Even granting that in all cases the limits of minimal repairs could be nicely measured, as the appellant's argument supposes, we judge that the court should be given reasonable discretion to determine the repairs necessary to restore the buildings for acceptable use within the legislative design. There is no evidence that the rehabilitation here proposed exceeds that necessary to return the building to economic life and acceptable usefulness.

We consider that the decree for specific performance here was proper and accordingly the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*