THE CITY OF CHICAGO, Plaintiff, v. IAN KIDEYS *et al.*, Defendants-Appellants (Darlena Williams Burnett, Receiver-Appellee).

First District (6th Division)   No. 1—92—0402

Opinion filed May 7, 1993.

Baker & McKenzie, of Chicago (Sidney M. Kaplan and Victor M. Grimm, of counsel), for appellant Chrysler First Business Credit Corporation.

No brief filed for appellee.

JUSTICE EGAN delivered the opinion of the court:

The City of Chicago (the City) filed an action against Ian Kideys, the owner of 4006 West Potomac in Chicago (the property), and his mortgagee, Chrysler First Business Credit Corporation (Chrysler), to enforce the municipal building code. The court appointed a receiver, Darlena Williams Burnett, and she petitioned the court for fees and expenses. The trial judge found Chrysler personally liable for Burnett's fees and expenses, and entered a judgment against Chrysler for $4,914.70. Chrysler does not dispute the amount of fees and expenses charged or the fact that Burnett is entitled to be paid but asserts that it cannot be held personally liable.

On June 6, 1991, the City filed a complaint against Kideys, Chrysler, and several other parties not relevant to this appeal. This complaint alleged many building code violations which the City asserted made the property unsafe for the tenants still living there and dangerous to the community. Citing sections 11—31—1 and 11—31—2 of the Illinois Municipal Code (Ill. Rev. Stat. 1991, ch. 24, pars. 11—31—1, 11—31—2), the City requested the imposition of fines against Kideys, injunctive relief requiring Kideys to correct the multiple building code violations, and the appointment of a receiver for the property "with the full powers of receivership including the right to issue and sell receivers certificates." Later in the trial court proceedings, the attorney for the City indicated that Kideys was "absent from the state."

On July 12, 1991, Chrysler moved for a protective order. The motion asserts that Chrysler neither owns nor controls the property, but has a recorded mortgage on the property. Although

Chrysler never filed any motion requesting possession or attempting to initiate a foreclosure and asserts that it never requested possession in any manner, on November 20 or 21, 1991, the trial judge entered an order giving Chrysler immediate possession of the property. The order was prepared by the City's attorney, was signed by the judge, and was stamped with the judge's stamp November 21, 1991. It states that a hearing regarding this order was held November 20, 1991. There is no transcript of the November 20 hearing in the record.

On November 21, 1991, Chrysler orally requested that a receiver be appointed for the property and named a particular person it wanted to serve as receiver. This motion was denied, and the trial judge instead appointed Burnett. Chrysler contends that it objected to Burnett's appointment, but has not placed a transcript of the November 21 hearing in the record. In the order appointing a receiver, Burnett was authorized to issue receiver's certificates for $2,000. Chrysler agreed to and did purchase these certificates.

Burnett filed a preliminary report on December 3, 1991, outlining the actions she had taken regarding the property and recommending that the receivership continue. On December 6, she filed an interim report. She had taken extensive action to clean the building, and had used all of the $2,000 as well as $994.70 of her own funds to pay for the removal of tenants and the cleaning and boarding up of the building. The report explains that as of December 5, 1991, the building was vacant, locked, and boarded up, no longer causing any health hazard. Burnett also filed a detailed listing of the time and money she had spent securing the building. At the end of the report, she requested an order directing "the defendant" to reimburse her $944.70. Chrysler does not dispute that Burnett spent the $2,000 she received for the receiver's certificates on expenses.

On December 9 or 10, 1991, the trial judge entered an order, prepared by the City, granting Burnett leave to file additional receiver's certificates and giving Chrysler time to answer Burnett's receiver's certificates request. The order lists the hearing date as December 9, but is stamped December 10, 1991, with the judge's stamp.

On December 10, 1991, Burnett's attorney filed his appearance and filed Burnett's petition for "Receiver's Fees." This petition requests reimbursement of the $994.70 plus fees for the 53 hours she expended and the hours her attorney expended, for a total of $4,914.70. The petition does not mention receiver's certificates.

Chrysler answered this petition on December 18, 1991, arguing that Burnett was indeed entitled to $4,914.70, and could secure a lien against the property for this amount under section 11—31—2 (Ill. Rev. Stat. 1991, ch. 24, par. 11—31—2), but could not hold Chrysler personally liable for the amount.

Also on December 18, the trial judge held a hearing on Burnett's petition. Chrysler's attorneys argued that they were not trying to keep Burnett from receiving compensation, but were "just asking for what the statute allows." The judge explained that Burnett did "an amazing job" by securing the building in only 10 days, and that her "extraordinary efforts" saved Chrysler money and protected its interest. He stated that, when Chrysler asked for appointment of its chosen receiver, it was invoking the court's equitable powers and therefore must be ready to do equity itself. The judge noted, "equity has been given to Chrysler" and found "[its] actions to be somewhat unusual when [it] asked for an appointment of a receiver to do a specific job [but] *** expect[s] someone to work without fees." He ordered Chrysler to pay Burnett $4,914.70.

Chrysler filed its notice of appeal and filed a brief in this court. Burnett has not filed a brief or an appearance, however. We gave her until September 9, 1992, to file a brief, and ordered that we would decide the case without oral argument and on the appellant's brief alone if she did not do so. She did not subsequently file either an appearance or a brief.

Although no appellee's brief has been filed, we are not precluded from reviewing the case. Due to the importance and uniqueness of the issue presented, we elect to consider this case on the merits. See *City of Springfield v. Ushman* (1979), 71 Ill. App. 3d 112, 114, 388 N.E.2d 1357.

Chrysler argues that a receiver appointed in a building code violation case must look to the rents or other income from the property or must request authorization to issue receiver's certificates to cover his fees and expenses. Support for this argument is found in section 11—31—2 of the Municipal Code (Ill. Rev. Stat. 1991, ch. 24, par. 11—31—2). This section provides that, if a judge orders the appointment of a receiver for a building, "such receiver may use the rents and issues of such property toward maintenance, repair and rehabilitation of the property *** and the court may further authorize the receiver to recover the cost of such maintenance *** by the issuance and sale of notes or receiver's certificates." (Ill. Rev. Stat. 1991, ch. 24, par. 11—31—2.) Further, "such notes or certificates *** shall be freely transferable, and when sold or trans-

ferred by the receiver *** shall be a first lien upon the real estate and the rents and issues thereof, and shall be superior to *** all prior existing liens and encumbrances, except taxes." (Ill. Rev. Stat. 1991, ch. 24, par. 11—31—2.) Chrysler asks us to interpret this statute as precluding the imposition of personal liability on mortgagees for receiver's expenses. The interpretation of the statute regarding mortgagee personal liability presents a question of first impression.

■■ Section 11—31—2 was amended in 1965 to allow for receiver's liens to have priority over other nontax liens. Although there is little case law construing this section, its constitutionality was discussed in *Community Renewal Foundation, Inc. v. Chicago Title & Trust Co.* (1970), 44 Ill. 2d 284, 255 N.E.2d 908. In *Community Renewal*, a potential receiver's certificates purchaser argued that the certificates could not gain priority over existing liens without unconstitutionally impairing the obligation of contracts. The supreme court disagreed; it held that section 11—31—2 was a valid exercise of the police power. The *Community Renewal* court explained the need for suitable housing in cities, and determined that the legislature intended to encourage rehabilitation of slum dwellings by allowing a receiver to finance such rehabilitation with receiver's certificates. The court explained, "[t]he imposition of a first lien on the equity of the real estate impresses us as being a reasonable means to make the certificates marketable and rehabilitation of concerned housing feasible." (*Community Renewal*, 44 Ill. 2d at 293.) The court recognized that section 11—31—2 subordinates a mortgagee's rights by making its lien lower in priority than a receiver's lien, but explained that this interference "may not be said to be so unreasonable or oppressive" when balanced against the great need to make the receiver's certificates marketable. *Community Renewal*, 44 Ill. 2d at 292.

We find that the statute allows Burnett to recover her costs and fees from rent monies or from receiver's liens, if authorized. Since there obviously are no rent payments present to offset Burnett's expenses, consistent with *Community Renewal* she is welcome to request the right to issue receiver's certificates that will subordinate Chrysler's lien. In fact, the trial judge apparently gave Burnett this authorization in his December 9 or 10 order granting her leave to file receiver's certificates. Nonetheless, she did not issue those additional certificates, but instead obtained a judgment against Chrysler.

■ We do not believe that the statute allows the imposition of personal liability under these circumstances. (See generally *Village of Arlington Heights v. American National Bank & Trust Co.* (1979), 72 Ill. App. 3d 744, 391 N.E.2d 108 (refusing to allow a receiver to take action not authorized by section 11—31—2).) Reading the plain and unambiguous language of section 11—31—2, we refuse to infer a legislative intent to hold mortgagees personally liable. (See *Illinois Housing Development Authority v. La Salle National Bank* (1985), 139 Ill. App. 3d 985, 487 N.E.2d 772.) In section 11—31—1, involving demolition of slum buildings, the legislature specifically provided that building owners may be personally liable, under certain circumstances, for demolition costs. (Ill. Rev. Stat. 1991, ch. 24, par. 11—31—1.) No such provision authorizing personal liability of any party appears in section 11—31—2. The intent of the legislature in enacting and amending section 11—31—2, as outlined in *Community Renewal*, was to make receiver's certificates more marketable and thus increase urban renewal. This intent is satisfied by the priority status given the receiver's certificate liens, and when balanced against mortgagee rights, this result is constitutional. When a mortgagee becomes personally liable for the receiver's expenses, however, the infringement on its rights is much greater than that envisioned by the legislature or authorized in *Community Renewal*. Therefore, we hold that a mortgagee cannot be held personally liable for receiver's expenses under section 11—31—2.

Nonetheless, there are common law rules holding parties such as mortgagees personally liable for receiver's expenses under certain circumstances, and the trial judge may have been applying these rules when he ordered Chrysler to pay for Burnett's services.

■ The general common law rule is that a receiver must look to the income or *res* of the property for his expenses and fees. This rule was outlined by the United States Supreme Court in *Atlantic Trust Co. v. Chapman* (1908), 208 U.S. 360, 52 L. Ed. 528, 28 S. Ct. 406. In *Atlantic Trust*, a mortgagee requested the appointment of a receiver to run a mortgaged company. The court of appeals required the mortgagee to pay the receiver's expenses and fees, because the money from the foreclosure of the company was inadequate to cover his expenses. The Supreme Court reversed, holding that the mortgagee could not be personally liable under these circumstances. The Court recognized that where a receiver is appointed through fraud or acts on false assurances, the parties responsible may be personally liable for the receiver's expenses. In this case, however, the general rule that "[t]he liabilities which [a

receiver] incurs are liabilities chargeable upon the property *** and not liabilities of the parties" applied where there was no fraud or unfair action on the part of the mortgagee. (*Atlantic Trust*, 208 U.S. at 375, 52 L. Ed. at 535, 28 S. Ct. at 411.) The *Atlantic Trust* Court explained: "The mere inadequacy of the property or fund to meet such [receiver] expenses constitutes in itself no reason why liability should be fastened upon the [mortgagee], who has been guilty of no irregularity." 208 U.S. at 376, 52 L. Ed. at 535, 28 S. Ct. at 411.

The Illinois Appellate Court reached the same conclusion in 1906, while the court of appeals' opinion in *Atlantic Trust* was on appeal to the Supreme Court. The Illinois court, in *McLean v. Gillespie* (1906), 130 Ill. App. 356, chose not to follow the *Atlantic Trust* court of appeals. The *McLean* court refused to hold a mortgagee personally liable for receiver's expenses where the funds from foreclosure of the mortgage were insufficient to pay the receiver's costs and fees. The court explained that receivers have the right to "look to the income first, and second to the *res*," and further can hold the party who requested their appointment personally liable if that party acted in bad faith by requesting their services. In the absence of some bad faith, however, to hold the mortgagee personally liable "would be unjust, inequitable and unjustifiable either in principle or by legal authority." (*McLean*, 130 Ill. App. at 368.) This general rule was applied more recently in *Rosenblatt v. Michigan Avenue National Bank* (1979), 70 Ill. App. 3d 1039, 389 N.E.2d 182.

■ In light of this precedent, we hold that the judgment against Chrysler must be reversed in the absence of any evidence showing bad faith on the part of Chrysler. Chrysler maintains that it did object to the appointment of Burnett and that it did not request or take possession of the property. Whether it did object and did take possession of the property are not relevant to the issue before us. Any failure to object to Burnett's appointment or assumption of possession would not constitute bad faith on the part of Chrysler.

The trial judge stressed the excellent job done by Burnett and the benefit that her services provided to Chrysler. Nonetheless, under *Atlantic Trust* and *McLean*, her recourse is through the property itself. There is no evidence here, in contrast to *Atlantic Trust* and *McLean*, that the proceeds from a foreclosure would be insufficient to cover Burnett's expenses. Yet, the inadequacy of the *res* in those cases was not enough to hold mortgagees personally liable. Further, there is no evidence of bad faith or fraud here. Thus, Bur-

nett's claim for fees does not fit into any exception to the common law rule that a receiver must look to the property for payment.

We judge that the proper way for Burnett to be compensated for her services is either to issue receiver's certificates under section 11—31—2, or to place a lien against the property under Illinois common law. She may not obtain reimbursement or payment simply by requesting a personal judgment against Chrysler. For these reasons, we hold that the judge erred in entering judgment against Chrysler.

The judgment of the circuit court is reversed.

Judgment reversed.

McNAMARA, P.J., and GIANNIS, J., concur.