THE CITY OF CHICAGO, Plaintiff-Appellee, *v.* ROBERT WESTPHALEN, Defendant-Appellant.—BARBARA AND EUGENE KRELL, Plaintiffs-Appellees and Cross-Appellants, *v.* ROBERT WESTPHALEN, Defendant-Appellant and Cross-Appellee.

First District (3rd Division)     Nos. 77-1863, 78-1095, 78-1251 cons.

Opinion filed March 4, 1981.

Max Rattner, of Chicago, for appellant.

William R. Quinlan, Corporation Counsel (Daniel Pascale and Jerome A. Siegan, Assistant Corporation Counsel, of counsel), for appellee City of Chicago.

C. Richard Johnson and Hugh R. McCombs, Jr., both of Isham, Lincoln & Beale, for appellees Barbara Krell and Eugene Krell.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

The City of Chicago (City) filed a complaint against the defendant, Robert Westphalen, the owner of a parcel of real property improved with a three-story brick structure located in the City of Chicago, alleging numerous municipal code violations at said property. A complaint alleging the same and additional violations was filed by the plaintiffs, Barbara and Eugene Krell, against the defendant pursuant to section 11—13—15 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 11—13—15) which allows owners of neighboring property to bring suit to enforce municipal building and zoning codes. The City's complaint was dismissed and then reinstated and consolidated with the Krells' suit. After a bench trial the court found the defendant's building contained 69 violations of the Municipal Code of Chicago (Municipal Code), appointed a receiver to bring the building into compliance, fined the defendant $100 for each violation and suspended the fines since the building was vacant and not producing income at the time of judgment.

The defendant's brief contains 21 points for appeal which we believe, in the interest of clarity and conciseness, can be combined to create seven main issues. They are: (1) whether the defendant was denied procedural due process when his building permit was revoked without a prior hearing; (2) whether the defendant was granted a lawful nonconforming use by a 1964 Zoning Board of Appeals resolution and, if so, whether this resolution was subject to collateral attack in the present proceeding; (3) whether the defendant's building was subject to a fire regulation pertaining to interior stairway walls; (4) whether the plaintiffs were estopped or barred from bringing the present suit on the basis of collateral estoppel;

(5) whether the defendant's trial was unfair because the defendant alleges that the trial judge was prejudiced and abused his discretion; (6) whether the trial judge erred in denying the defendant's motion for summary judgment, and (7) whether the Krells were proper plaintiffs. The Krells have cross-appealed alleging the trial court erroneously denied their post-trial petition for costs and attorneys' fees in accordance with section 11—13—15 of the Illinois Municipal Code. Ill. Rev. Stat. 1975, ch. 24, par. 11—13—15.

The building which is the subject of this appeal is an apartment building located on the 5300 block of South Kimbark Avenue in Chicago, Illinois. It was constructed in 1901 and contained 10 apartments, three on each floor and one in the basement. According to the defendant's testimony, the building had been converted to a larger number of units prior to his purchase of it in 1945. At the time of the trial the building had 35 units or apartments. The defendant has not resided in the building since 1957.

In June 1975 the City filed suit against the defendant alleging 29 violations of the Municipal Code based on an inspection of the defendant's building by the City of Chicago Building Department (Building Department) conducted on April 25, 1975. The Krells filed suit in September 1975 citing numerous ordinance violations including the violations alleged in the City's complaint. Each of the parties filed amended complaints alleging additional violations discovered during subsequent inspections of the building.

In May 1976, while the proceedings were pending, the defendant submitted to the Building Department an application for a permit to make repairs to the building. The permit was issued on May 28, 1976, but was subsequently revoked by the building commissioner on June 3, 1976, because of a lack of compliance with sections 7.5—4 (minimum lot area) and 7.12—2 (off-street parking) of the Chicago Zoning Ordinance (Municipal Code of Chicago, ch. 194A, §§7.5—4, 7.12—2). No hearing on the matter of the permit was held prior to its revocation.

I

As the defendant's first issue on appeal, he contends he was denied procedural due process because his building permit was revoked without a prerevocation hearing. The defendant argues that he had a property right entitled to fourteenth amendment protection (U.S. Const., amend. XIV). The defendant relies on *Trans-Oceanic Oil Corp. v. City of Santa Barbara* (1948), 85 Cal. App. 2d 776, 194 P. 2d 148. In that case the permit was revoked over five years after its issuance based on a subsequently enacted zoning ordinance that made the permittee's activities illegal. The

California Court of Appeals reversed the revocation, finding the permittee had acquired a vested property right based on his substantial expenditures made in reliance on the validly issued permit. Since the revocation was without notice or hearing, the court said it was inoperative and without legal force.

■■ The instant case is distinguishable because the permit was not validly issued. Before the Commissioner of Buildings issues a building permit he must examine and approve all drawings and plans for the proposed construction or alteration. One determination that must be made is that the building and premises are in compliance with the Chicago Zoning Ordinance. (Municipal Code of Chicago, ch. 43, §43—4.) In the case at bar, after the building permit had been issued to the defendant, the building commissioner determined that the defendant's building was not in compliance with certain zoning ordinances. Thus, the commissioner was empowered to revoke the permit because a violation of section 43—4 of the Municipal Code existed. See Municipal Code of Chicago, ch. 43, §43—24.

■■■ We agree with the trial court's finding that the defendant provided no showing that a prerevocation hearing is required when a permit is revoked immediately upon the discovery that it was issued in error. Courts have held that licenses and permits are privileges from which no vested property rights attach. (See, *e.g., Weinstein v. Daley* (1967), 85 Ill. App. 2d 470, 229 N.E.2d 357; see generally, 9 McQuillin, Municipal Corporations §26.81a, at 183 (3d ed. 1978).) While a license or permit cannot be abrogated without sufficient cause (9 McQuillin, Municipal Corporations §26.81a, at 183 (3d ed. 1978)), in the absence of a legal requirement there is no necessity for notice and opportunity to be heard before the revocation (9 McQuillin, Municipal Corporations §26.88, at 194 (3d ed. 1978)). (See *Cafeteria & Restaurant Workers Union, Local 473 v. McElroy* (1961), 367 U.S. 886, 6 L. Ed. 2d 1230, 81 S. Ct. 1743.) No such legal requirement exists in this State.

■■ Furthermore, under Illinois law the permittee does not have a vested right to complete his approved plans unless the building permit was legally issued, and the property owner substantially changed his position or incurred substantial expenditures or obligations. (See, *e.g., O'Laughlin v. City of Chicago* (1976), 65 Ill. 2d 183, 357 N.E.2d 472; *City of Chicago v. Zellers* (1965), 64 Ill. App. 2d 24, 212 N.E.2d 737.) In *Ganley v. City of Chicago* (1974), 18 Ill. App. 3d 248, 309 N.E.2d 653, the City revoked a building permit three weeks after issuance upon the discovery that the proposed building would violate the minimum lot requirements specified in section 7.5—2 of the City zoning ordinance (Municipal Code of Chicago, ch. 194A, §7.5—2). Although the court found the plaintiff's

permit had been issued through normal administrative procedures, the court held that the permit was illegally issued because the ministerial officer exceeded the authority conferred upon him. The court stated a building permit should not have been granted in violation of the terms of the zoning ordinance and concluded that the unauthorized permit was a nullity and conferred no rights upon the permittee.

The defendant in the instant case also contends that the trial judge's finding that the permit was improperly issued was not supported by the evidence. He cites the testimony of witness A.W. Brunson, chief plan examiner for the Department of Buildings. Brunson stated the defendant's architectural plans submitted during the permit application process were processed in the normal manner and in accordance with standards of procedure established by the Building Department. To further support his argument the defendant states that the letter of revocation did not state that the permit was revoked because of a subordinate's mistake.

Alex H. Zimmerman, Deputy Commissioner of Buildings, testified that on a day or two prior to June 3, 1976, he met with an assistant corporation counsel for the City and the zoning administrator. The recommendation to revoke defendant's permit was made at this meeting. Entered into evidence was a memorandum dated June 3, 1976, written by Zimmerman, which stated that the defendant's application for permit should not have been approved because the plans did not conform to the Zoning Board of Appeals resolution of November 24, 1964, or to certain zoning ordinance requirements. Additionally, Irving M. Addis, the defendant's architect, testified on direct examination during the plaintiffs' case, that he prepared plans for changes to the defendant's building sometime prior to May 24, 1976, in order to obtain a building permit. He indicated that this set of plans, which was submitted in May 1976 with the application for a permit, contained a breakdown of efficiency units and apartments which did not comply with the requirements of the Zoning Board of Appeals resolution.

In *People ex rel. American National Bank & Trust Co. v. Smith* (1969), 110 Ill. App. 2d 354, 249 N.E.2d 232, the court held that a subsequent discovery of noncompliance with the judicial order specifying certain prerequisites raises a valid right in the building commissioner to reexamine the legality of a permit's issuance. We believe a similar right exists in the commissioner when, as in the instant case, noncompliance with the Zoning Board of Appeals resolution, as well as zoning violations, are subsequently discovered. Therefore, on the basis of the testimony and exhibits discussed above, we believe there was sufficient evidence to support a finding that the defendant's permit was erroneously issued and that the permit was a nullity and conferred no rights upon the defendant such as the right to a prerevocation hearing.

## II

As his second argument on appeal, the defendant contends he was granted a nonconforming use by the 1964 resolution of the Zoning Board of Appeals. He argues, therefore, that the present action is a forbidden collateral attack of this resolution.

In 1964 the City of Chicago brought a lawsuit against the defendant citing numerous building violations on the same property as involved in the instant case including noncompliance with sections 78—10.1, 78—10.2 and 62—3.2 of the Municipal Code. Included in the defendant's answer to this complaint was a denial that he violated sections 78—10.1 and 78—10.2 because the use of his building constituted a valid nonconforming use. The defendant's answer also indicated that he would comply with section 62—3.2 which required the enclosure of stairway walls with partitions providing a fire resistance rating of not less than two hours. The certified trial court half-sheet for the 1964 case made a part of the record in the instant case indicated that the defendant was found guilty of the ordinance violations described in the City's complaint. Judgment and costs were suspended.

Thereafter, the defendant submitted to the City Building Department an application for a building permit to correct the City ordinance violations. His request was denied by the office of zoning administrator because the building, which contained 15 apartments and 22 efficiency units, did not conform to zoning ordinance requirements as to off-street parking, minimum lot area and maximum number of efficiency units (Municipal Code of Chicago, ch. 194A, §§7.12, 7.5—4, 7.5(6)). The defendant appealed to the Zoning Board of Appeals and argued that the building had a valid nonconforming use because the conversion of 10 apartments to 37 units occurred when the zoning ordinances permitted such a conversion. The Board of Appeals reversed the zoning administrator's decision and ordered that the defendant be issued a permit. The resolution indicated in part:

> "RESOLVED, that the appeal be and it hereby is sustained * * * and he [the zoning administrator] is authorized to issue a permit to make repairs to the non-conforming three-story brick apartment building containing 16 dwelling and 19 efficiency units[1] * * * upon condition that all applicable ordinances of the City of Chicago shall be complied with * * *."

A nonconforming use is a use of land or a building that does not comply with current zoning regulations but which is permitted by statute or ordinance to continue for a specified period of time because the use

---

[1] The resolution gives a breakdown of apartment and efficiency units different from the configuration appearing in the zoning administrator's form denying the permit application. The reason for this discrepancy does not appear in the record.

was lawful at the time the zoning regulation was adopted. See, *e.g., City of Rockford v. Sallee* (1970), 129 Ill. App. 2d 75, 262 N.E.2d 485; Ill. Rev. Stat. 1975, ch. 24, par. 11—13—1; Municipal Code of Chicago, ch. 194A, art. 3; see generally 8A McQuillin, Municipal Corporations §25.180, at 6 (3d ed. 1976); 2 Yokley, Zoning Law & Practice §16—2, at 211-12 (3d ed. 1965).

■■ While we do not concede that the defendant's building was granted a nonconforming zoning use in 1964, assuming arguendo that this conclusion is correct, we fail to see how this status protected the defendant from the instant proceedings. The Chicago Zoning Ordinance permits the continued use of land, a building or a structure for residence, business, commercial or manufacturing purposes when such use is no longer permitted in the district. Article 2 of the ordinance provides that "[t]he provisions in the Chicago Zoning Ordinance are *cumulative and additional limitations* upon all other laws and ordinances * * * governing any subject matter in The Chicago Zoning Ordinance." (Emphasis added.) (Municipal Code of Chicago, ch. 194A, art. 2.) The zoning ordinance does not immunize the owner of a building having a nonconforming use from requirements to insure the public health and safety. Thus, we believe the defendant was subject to the building, electrical, plumbing and fire provisions of the Municipal Code regardless of the existence of a lawful nonconforming use. As the 69 violations named in the City's complaint did not involve the zoning violations considered in 1964, it cannot be said that the City's present action against the defendant was a collateral attack of the 1964 Zoning Board of Appeals proceeding. While the Krells' complaint did allege three zoning violations, the trial court did not find that zoning violations had occurred.[2] Therefore, we feel that it is unnecessary to determine whether this portion of the Krells' complaint was a forbidden collateral attack on the 1964 proceedings.

### III

The defendant next contends that his building was not subject to the fire regulations requiring two-hour fire resistant walls for interior stairways in buildings exceeding three stories in height. (Municipal Code of Chicago, ch. 62, §62—3.2(a); ch. 78, §78—10.1.) He bases this argument on the fact that the provision of the Municipal Code defining a basement containing apartments as the first story to a building was not enacted until 1942. He alleges that since his building contained basement apartments prior to that time, this provision should not be applied retroactively so as to classify the defendant's building as four stories.

---

[2] The written judgment prepared by the City stated "that the subject Building is found in violation of sixty-nine Provisions of the Municipal Code as set forth in the record." The memorandum accompanying decision cited only building, electrical, plumbing and fire regulation violations.

The Krells argue that the defendant's logic is strained and wholly inconsistent with the clear intention of the city council to apply the fire protection provisions to pre-ordinance buildings. They cite section 78—4 of the Municipal Code which states: "Existing buildings shall comply with all applicable fire protection requirements of this code." To further support their argument, the Krells cite *City of Chicago v. Sheridan* (1976), 40 Ill. App. 3d 886, 353 N.E.2d 270. *Sheridan* held that the fire protection provisions of chapter 62 of the Municipal Code applied to all buildings whenever built and stated:

> "We believe the law to be well settled that it was the intent of the City Council to make the fire protection requirements of the building code apply to all 'existing' buildings and that that term included 'pre-ordinance' buildings." 40 Ill. App. 3d 886, 888, 353 N.E.2d 270, 272.

■■ Applying the *Sheridan* rationale to the case at bar, we hold that the defendant's building was subject to the provisions of chapter 62 of the Municipal Code. In view of the intention to apply the fire requirements to pre-ordinance buildings, we further hold that the defendant's basement should be considered as one of four stories irrespective of the enactment date of the provision describing a basement as a story when it consists of apartments. Therefore, the trial judge properly concluded that the defendant's building exceeded three stories in height and thus required two-hour fire resistant interior stairway walls.

### IV

The defendant's fourth issue on appeal was whether the plaintiffs were estopped or barred from bringing the present suit based on principles of collateral estoppel or estoppel by verdict. In 1971 the City sued the defendant charging him with various building, electrical and fire regulation violations. The defendant contends that the trial court found that he had complied with the applicable ordinance requirements in 1971 and thus the plaintiffs in the instant case should be precluded from relitigating these issues.

■■ Estoppel by verdict or collateral estoppel is a branch of res judicata (*Kramer v. Chicago Title & Trust Co.* (1979), 69 Ill. App. 3d 1015, 387 N.E.2d 1105; *City of Evanston v. G. & S. Mortgage & Investment Corp.* (1973), 11 Ill. App. 3d 642, 297 N.E.2d 331) which prohibits the relitigation of the same issues in different claims or causes of action[3] by the same

---

[3] Where the same building ordinance violations are alleged in a subsequent suit, but concerning different dates, the subsequent action is a different claim or cause of action because each day of such violations constitutes a separate and distinct offense. Municipal Code of Chicago, ch. 39, §39—3; see *City of Evanston v. G. & S. Mortgage & Investment Corp.* (1973), 11 Ill. App. 3d 642, 297 N.E.2d 331.

parties or their privies (*City of Burbank v. Glazer* (1979), 76 Ill. App. 3d 294, 395 N.E.2d 97). The parties to the subsequent action are estopped from relitigating those issues which were in fact raised and decided in the prior action. (*Pierog v. H. F. Karl Contractors, Inc.* (1976), 39 Ill. App. 3d 1057, 351 N.E.2d 249; *City of Evanston; City of Chicago v. Provus* (1969), 115 Ill. App. 2d 176, 253 N.E.2d 182.) There can be no estoppel by verdict or collateral estoppel unless there shall have been a finding of specific fact in the former judgment or record that is material to that case and to the pending case. (*Department of Transportation v. Shaw* (1977), 68 Ill. 2d 342, 369 N.E.2d 884.) The burden of establishing the defense of collateral estoppel is upon the party invoking it (*Chicago Historical Society v. Paschen* (1956), 9 Ill. 2d 378, 137 N.E.2d 832), and the party must show with clarity and certainty the precise issues and judgment in the former action. *Kedzierski v. Kedzierski* (1967), 86 Ill. App. 2d 264, 229 N.E.2d 919.

■■ The defendant in the instant case produced the circuit court order entered in the 1971 case. The order provided:

"This cause coming to be heard by the Court.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that this cause is dismissed all costs having been paid."

This order does not reflect a finding of specific fact or a determination of the issues. Nothing is disclosed as to the substance of the dismissal. Therefore, the defendant's defense of collateral estoppel was properly denied by the trial court. See *Pierog; Continental-Midwest Corp. v. Hotel Sherman, Inc.* (1957), 13 Ill. App. 2d 188, 141 N.E.2d 400.

## V

The defendant's fifth issue on appeal is whether his trial was unfair because the trial judge was prejudiced and abused his discretion. To support his contentions the defendant states that the trial judge:

(1) Prejudged the case in favor of the City;

(2) Stated on several occasions that the issues were not going to be decided on the pleadings;

(3) Attempted to "bludgeon" the defendant into reaching a settlement with the City;

(4) Pursued a course of "economic attrition" to force the defendant to agree to a settlement with the City;

(5) Advised the defendant to get another lawyer;

(6) Stated on several occasions in advance of trial and before hearing evidence that the building commissioner had a right to revoke the defendant's permit;

(7) Abused his discretion in continuing an injunction;

(8) Abused his discretion in the matter of holding lengthy and costly receivership hearings without entering definitive orders thereafter, and

(9) Refused to enter orders on the defendant's motions for leave to file a petition for *mandamus* and counterclaim and refused to address the defendant's request for a jury trial which had been granted by a previous judge.

## A

■■ Initially it should be noted that during a nonjury trial the comments of a trial judge are allowed greater latitude than would be acceptable were a jury present. (*Joray Mason Contractors, Inc. v. Four J's Construction Corp.* (1978), 61 Ill. App. 3d 410, 378 N.E.2d 328.) Furthermore, not every comment or unguarded expression by a trial judge will support a claim of prejudice. A showing of prejudicial effect is required. (*Faltysek v. Kloepfer* (1971), 3 Ill. App. 3d 8, 279 N.E.2d 105.) The defendant has not sustained this burden.

Reviewing the defendant's first four points and the context within which the remarks were made, we fail to see any impropriety by the trial judge or any prejudice to the defendant. The remarks relied upon by the defendant were made during pretrial hearings when the trial judge made numerous attempts to resolve the case to the satisfaction of the parties thereby avoiding the need to determine the legal issues involved. The trial judge, cognizant of the fact that he had entered a restraining order prohibiting tenant occupancy of the defendant's building,[4] indicated his desire to dissolve the order and to restore the defendant's property to an income-producing operation. He encouraged the defendant to work with the City to get approval of plans to repair the building in order to make it habitable. At no time was economic force used by the judge to force a settlement between the parties.

We also cannot find any prejudice to the defendant based on an alleged comment by the trial court advising the defendant to retain another lawyer. The defendant quotes a passage from the transcript of a post-trial hearing in which the judge admits that he advised the defendant once in open court to retain another lawyer because of the fruitlessness of the efforts to resolve the matter before the court. In reviewing the voluminous record, however, we can only find one passage from which

---

[4] The order had been entered on January 19, 1977, pursuant to the emergency motion of the City and the Krells to vacate the defendant's building after the gas boiler malfunctioned causing one tenant's death and the hospitalization of five others due to carbon monoxide poisoning. The temporary restraining order was continued by further orders of the court until June 1, 1977.

an inference can be made that the judge suggested that the defendant obtain a new lawyer. The context of the comment was as follows:

"THE COURT: The exercises of law are proper, but what I am trying to do is to see how we can get a matter of the Court cleared up, and the way it can be cleared up, I have indicated three months ago.

[Defendant's Counsel]: I can't go along with that. I am going to say this much, I don't want to get in the way of settlement. I am not here to make up his [defendant's] mind. I have offered the last time, and I am going to do it one more time, and I may do it anyway. If I can get leave of Court to withdraw, if I felt for one minute that I was impeding any settlement action, I would get out of here in a minute, because this is a stone around my neck with you but having once undertaken the duty I can't turn my tail and run, because I am not made that way, and I am going to see this through as long as he wants me to, to any forum that it takes us. Now, I am not going to permit him—

THE COURT: Sometimes they do change pitchers in the ballgame.

[Defendant's Counsel]: I am grateful for the Judge, for thinking that the pitcher ought to be relieved, but my client has had an experience—

THE COURT: I have been hearing these matters since January, their fourth or fifth case, fourth or fifth lawyer, and he has experience with the other ones. His results have been extremely negative."

This colloquy again evidences the trial judge's attempt to encourage a settlement and avoid lengthy litigation. The defendant contends that the judge's comments undermined the lawyer-client relationship but does not show how his relationship with his attorney was affected, especially since he continued to be represented by the same attorney. Furthermore, we note that the defendant's own attorney initiated the subject of his withdrawal as counsel. Thus, we fail to see evidence that the defendant was prejudiced.

We also disagree with the defendant's sixth point that the trial judge prejudged the case when he stated that the commissioner of the Department of Buildings had a right to revoke the defendant's building permit. Reviewing the entire transcript of the report of proceedings for the pretrial hearing on June 1, 1977, we interpret the statement cited by the defendant as an indication that the building commissioner had the power to revoke permits. The judge did not conclude at that time, however, that the commissioner had rightfully revoked the defendant's permit. This is evidenced by the judge's subsequent statement that public officers can

modify their orders, provided reasons exist for doing so, and the indication by the judge that he was going to examine the defendant's petition for *mandamus* and the defendant's allegations that the building commissioner had no right to revoke the permit before making a determination on this issue. In view of these further statements by the trial judge, we conclude that the judge did not make a predetermination that the defendant's building permit was rightfully revoked.

B

The defendant also contends that the trial court abused its discretion in continuing the temporary restraining order entered on January 19, 1977, ordering that the defendant's building be vacated until further order of the court. That order was issued pursuant to emergency motions filed by the plaintiffs which alleged the defendant's building failed to conform to minimum standards of health and safety established by City ordinance and that the defendant's building was imminently dangerous to the public health and safety due to carbon monoxide leaks. The court order was entered after the plaintiffs presented testimony in the presence of the defendant's counsel and the court determined that the defendant's building failed to conform to certain minimum health and safety standards. The cause was continued to January 20 when the plaintiffs presented additional witnesses concerning the carbon monoxide leakage. On that date the court modified its order of January 19 by limiting the duration of the temporary restraining order to 10 days.

On January 21, 1977, the City presented an emergency motion for the court to order the gas company to shut off the gas supply to the defendant's building, because occupants in the building were using their gas stoves to heat their apartments. Upon notice to all the parties and testimony of witnesses, the court found a dangerous and hazardous condition existed in the defendant's building and granted the motion. A subsequent order was issued on January 27 directing the City to cause the gas supply to be restored to the defendant's building upon the installation of a pressure stat, spill switch and louver panel in the boiler room. This order recited the defendant's agreement to have the work completed immediately. Thereafter, the court continued its January 19 temporary restraining order on January 27 to February 25, 1977; on February 22 to March 16, 1977; on March 16 to April 15, 1977; on April 15 to May 19, 1977, and on June 1, 1977, granted the defendant's motion to dissolve the temporary restraining order.

The defendant contends that his motion to dissolve, which was filed on February 4, 1977, should have been granted at the hearing on February 18. At that time the defendant called five witnesses. Three of the witnesses testified that they had been hired by the defendant to repair the

boiler and gas stoves in the defendant's building after the carbon monoxide leaks occurred. The defendant also called a City building department supervisor and boiler inspector. During the course of this testimony the City's counsel stipulated that a City boiler inspector had taken a carbon monoxide test and no adverse leakage was discovered after the burner in the boiler had been running for one hour. The defendant urges that on the basis of the testimony presented he conclusively established that the reasons for the restraining order had ceased.

■■ The trial judge concluded that the evidence presented by the defendant at the February 18 hearing did not demonstrate that the defendant's building was fit for human habitation or that the building was brought into compliance with the law. We find that this conclusion was not erroneous or improper. The restraining order in effect was issued because the defendant's building failed to conform to certain minimum health and safety standards. The only evidence presented by the defendant concerned the absence of carbon monoxide leakage. The evidence showed that the defendant had not complied with the January 27 court order, which recited his agreement to install a pressure stat, spill switch and louver panels in the boiler room. While the City boiler inspector admitted that City ordinances did not require a spill switch or pressure stats on the boiler, the inspector did testify that the gas company would not turn the gas back on unless a spill switch was installed. One of the defendant's witnesses also testified that the water pipes froze and burst throughout the defendant's building after the gas company shut off the gas supply. Since the defendant's building was without its natural gas supply and since there was no evidence that the defendant had rectified his building's failure to conform to minimum health and safety standards, the court properly denied the defendant's motion to dissolve the extended temporary restraining order on February 18, 1977.

At subsequent hearings no witnesses were presented. In March the City indicated that the boiler had been turned on by agreement of the parties. The plaintiffs continued to argue that there was insufficient evidence presented by the defendant as to the safety of his building. Thereafter, the judge suggested that the defendant submit an application for permit and repair plans to the Building Department so that the defendant could make his building habitable. Plans were submitted to the Building Department but certain portions were not approved. In April, the judge again found defendant's building not habitable and continued the injunction.

While no transcript was made a part of the record for the afternoon hearing on May 19, 1977, it appears from the June 1, 1977, transcript that the parties agreed that a new inspection should be made of the defendant's building and a report made to the court. On June 1 counsel for the City

informed the judge that the defendant refused entry to City inspectors. A new agreement was thereafter reached whereby the defendant would allow an inspection of his building. The judge then granted the defendant's motion to dissolve the temporary restraining order, not because of changed conditions in the defendant's building, but because the order had continued too long and no bond had been ordered. He advised the City to file a new motion for preliminary injunction based on insufficiencies found in the defendant's building as a result of the scheduled inspection.

■■ A temporary restraining order is an emergency remedy of extremely brief duration. (*Paddington Corp. v. Foremost Sales Promotions, Inc.* (1973), 13 Ill. App. 3d 170, 300 N.E.2d 484.) When issued *ex parte* it cannot be granted for longer than 10 days (Ill. Rev. Stat. 1975, ch. 69, par. 3—1), but when notice is provided can be issued for a period greater than 10 days. (*Seagram Distillers Co. v. Foremost Sales Promotions, Inc.* (1973), 13 Ill. App. 3d 166, 300 N.E.2d 490.) The court has inherent power during the pendency of a case before it to issue and vacate a temporary restraining order. To dissolve the order, however, there must be sufficient basis in the record to support the action taken by the court. *Kraft v. Solon* (1975), 32 Ill. App. 3d 557, 336 N.E.2d 577.

As discussed above the temporary restraining order was issued because of the carbon monoxide leakage and evidence presented by the City that the defendant's building failed to conform to minimum health and safety standards. The City was prepared to stipulate in February 1977 that the carbon monoxide leakage had been corrected. However, the judge stated in March that he had heard evidence concerning grave conditions that existed in the defendant's building and in April that the defendant's building was not habitable.

■■ It is well settled that the party seeking a dissolution order has the burden of supporting his motion. When no showing to justify the dissolution of the injunction has been made, it is error for the trial court to dissolve a temporary restraining order. (*Kraft.*) The defendant's motion to dissolve the temporary restraining order alleged that the carbon monoxide leakage had been remedied. The defendant presented no other basis to support his motion. We feel the restraining order should have been extended until the court heard evidence to determine whether the defendant's building was still dangerous to the health and safety of its tenants. Therefore, we disagree with the defendant's contention that the judge should have granted his motion to dissolve the temporary order in February.

## C

As further evidence of abuse the defendant alleges that the trial court erroneously appointed a receiver to bring the building into compliance with the Municipal Code of Chicago.

Although the appointment of a receiver is generally a harsh remedy, it is an equitable remedy used when in the sound discretion of the trial judge it is needed to insure complete justice. To determine whether or not the appointment of a receiver was reasonable, the particular circumstances surrounding the case must be examined. *Hurst v. Papierz* (1973), 16 Ill. App. 3d 574, 306 N.E.2d 532, *cert. denied sub nom. Papierz v. Rauth* (1974), 419 U.S. 835, 42 L. Ed. 2d 62, 95 S. Ct. 62.

In the instant case, at the conclusion of numerous pre-trial hearings and 16 days of trial, the court concluded that the defendant's building violated 69 provisions of the Municipal Code. Citing considerable testimony from representatives of the City of Chicago as to building, electrical, plumbing and fire regulation violations and citing the abundant exhibits provided, the trial judge found the defendant's building unsafe, dangerous and unfit for decent human habitation. These findings were not contrary to manifest weight of the evidence, nor does the defendant contend otherwise. Throughout the proceedings, the defendant did not argue an absence of violations but instead argued that he had affirmative defenses which, as discussed above, were properly rejected.

The appointment of a receiver to obtain compliance with building codes was upheld in *Community Renewal Foundation, Inc. v. Chicago Title & Trust Co.* (1970), 44 Ill. 2d 284, 255 N.E.2d 908. (See also *City of Chicago v. Cosmopolitan National Bank* (1979), 77 Ill. App. 3d 212, 395 N.E.2d 1070.) In *Community Renewal Foundation* the court-appointed receiver had issued certificates for the purpose of obtaining funds to permit necessary repairs and alterations. In an action seeking specific performance of a contract to purchase the certificates, the supreme court addressed the propriety of the appointment of the receiver. The court stated:

> "We regard the appointment of a receiver to obtain compliance with the building codes, where because of continuing violations the property has become unsafe and a danger to the community, as within the inherent powers of an equity court. [Citations.] Too, the providing of adequate housing accommodations is a problem of first importance and urgency for the cities. The appointment of a receiver when necessary to preserve and restore residential property is also obviously in the public interest and under circumstances appearing here was an appropriate exercise of a court's equity powers. [Citations.]" 44 Ill. 2d 284, 291, 255 N.E.2d 908, 913.

■■ In the instant case, many of the violations in the defendant's building were of a continuing nature. For example, the City brought a complaint against the defendant in 1964 and the defendant was subsequently found guilty of ordinance violations described in that complaint. Many of those violations, based on building inspections conducted on September 3,

1963, and March 13, 1964, again appeared in the City's present complaint based on October 1 and December 5, 1975, inspections. While the record contains numerous examples of continuous violations, we do not deem it necessary to discuss them in detail. To conclude, however, we feel there was ample evidence in the record to support the trial judge's appointment of a receiver. This exercise of equitable powers was not unreasonable or an abuse of discretion since because of continuing violations, the defendant's building remained in disrepair and unsafe.

## D

As the defendant's ninth point to support his argument that his trial was unfair, he cites the trial judge's refusal to enter written orders denying his motions for leave to file a petition for *mandamus* and counterclaim and the trial judge's refusal to allow a jury on the law counts. With regard to the court's failure to enter written orders, the defendant relies on *Urso v. Reynolds Metals Co.* (1968), 95 Ill. App. 2d 251, 238 N.E.2d 271. The defendant points to a reference in *Urso* to chancery courts that "[u]nder current court practice the submission and entry of written orders is now used in law as well as chancery." (95 Ill. App. 2d 251, 256, 238 N.E.2d 271, 273.) The *Urso* court did not, however, rule on the requirement that chancery courts must enter written orders and is, therefore, of no precedential value to the issue at bar.

Orders on motions other than in the course of trials are governed by Supreme Court Rule 271 (Ill. Rev. Stat. 1977, ch. 110A, par. 271), which states:

> "When the court rules upon a motion other than in the course of trial, the attorney for the prevailing party shall prepare and present to the court the order or judgment to be entered, unless the court directs otherwise."

■■ We feel Supreme Court Rule 271 governs the instant proceedings and, therefore, hold that the filing of written orders on motions other than during the course of trial is not mandatory but discretionary with the trial judge. The judge in the case at bar denied the defendant's motions for leave to file a petition for *mandamus* and counterclaim but indicated he would not enter a written order at the time of these denials. Thus, within the context of Supreme Court Rule 271, the court directed otherwise. Furthermore, while the judge did not indicate amply his reason for refusal, the defendant has not shown how this refusal prejudiced his case. Therefore, we reject the defendant's argument in this regard as well.

The defendant also contends his trial was unfair because he was denied a trial by jury as to the law issues in his case.

■■ The City of Chicago and the private plaintiffs brought the present action against the defendant pursuant to section 11—13—15 of the Illinois

Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 11—13—15) which authorized a proceeding in equity to restrain and prevent the violation of ordinances governing building code violations. A similar statute governing zoning ordinance violations was the subject of discussion in *City of Highland Park v. Calder* (1932), 269 Ill. App. 255. The *Calder* court relied on *Parmelee v. Price* (1904), 208 Ill. 544, 70 N.E. 725, and held it was not error to deny the defendant's request for a jury trial stating:

" 'Where a new class of cases is directed by the legislature to be tried in chancery, and it appears, when tested by the general principles of equity, that they are of an equitable nature and can be more appropriately tried in a court of equity than in a court of law, the chancellor will have the right, as in other cases in chancery, to determine all questions of fact without submitting them to a jury.' ". (269 Ill. App. 255, 261.)

(See *City of Chicago v. Miller* (1963), 27 Ill. 2d 211, 188 N.E.2d 694; *Lawn Savings & Loan Association v. Quinn* (1967), 81 Ill. App. 2d 304, 225 N.E.2d 683; *Oppenheimer Bros. v. Joyce & Co.* (1958), 20 Ill. App. 2d 34, 154 N.E.2d 856 (where equity has acquired jurisdiction, it may determine all matters including legal issues).) The trial judge in the instant case denied the defendant's motion for a jury trial indicating that the case was a chancery matter and would be treated as such. We believe this ruling was not erroneous.

In conclusion, we cannot say that the trial judge displayed bias or conducted himself improperly. The defendant received a fair and impartial trial. We can only but agree with the plaintiffs to this suit that the proceedings were continuously delayed by the defense due to lack of preparation, repeated diversionary tactics and continuous uncalled for remarks and interruptions. As the judge indicated in his memorandum accompanying decision, there had been 23 court appearances and 16 days of trial. (Prior to that judge's assignment to the case on December 5, 1976, there had been 46 court appearances.) We feel the trial judge should be commended for his patience and impartiality throughout this unduly long and trying case.

## VI

Twenty-six months after the City filed its first complaint in the instant case the defendant presented a motion for summary judgment asserting that he was entitled to judgment as a matter of law based on:

(1) The defense of res judicata;
(2) The failure of the City to appeal the 1964 zoning board of appeals resolution, and
(3) The failure of the City to provide the defendant with adequate

notice and hearing on the matter of his building permit revocation.

The defendant argues on appeal that this motion was erroneously denied.

A summary judgment is properly granted when the pleadings, depositions and admissions on file, together with any affidavits and exhibits, establish that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. (*Barnes v. Washington* (1973), 56 Ill. 2d 22, 305 N.E.2d 535; *Molloy v. Santucci Construction Co.* (1979), 78 Ill. App. 3d 249, 397 N.E.2d 125; Ill. Rev. Stat. 1977, ch. 110, par. 57(3).) For the reasons discussed in parts I through IV of this opinion, the defendant was not entitled to a judgment as a matter of law. Therefore, the trial court did not err in denying his motion for summary judgment.

## VII

As his final argument on appeal, the defendant contends that the trial court committed error by not dismissing the Krells' complaint. He argues the multiple complaints caused a duplication of effort by the City and the Krells and indirectly harassed the defendant by forcing him to defend two lawsuits. The defendant also contends the Krells did not come to court with clean hands.

The defendant cites a portion of section 11—13—15 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 11—13—15) which confers the right on adjoining landowners and tenants to enforce zoning and building ordinances. The pertinent portion of the statute provides:

"In case any building or structure, * * * is constructed, reconstructed, altered, repaired, converted, or maintained, or any building or structure * * * is used in violation of an ordinance or ordinances adopted under Division 13, 31 or 31.1 of the Illinois Municipal Code [ordinances regulating zoning, unsafe buildings and building code violations], or of any ordinance or other regulation made under the authority conferred thereby, the proper local authorities of the municipality, or any owner or tenant of real property, within 500 feet[5] in any direction of the property on which the building or structure in question is located * * * may institute any appropriate action or proceeding * * *."

---

[5] While this action was pending, the statute was amended to extend the distance of property owners and tenants to 1200 feet of the structure. Ill. Rev. Stat. 1977, ch. 24, par. 11—13—15.

The defendant relies on the conjunction "or" in the statute and contends that either the governmental authorities or private citizens may institute

legal proceedings but not both. He contends that private citizens may bring suit only when municipal authorities fail or refuse to act.

■■ We disagree with the defendant's contentions and hold that the word "or" as it appears in section 11—13—15 should not be given such a narrow construction. The predecessor of section 11—13—15 was section 73—9 of the "Revised Cities and Villages Act" (Ill. Rev. Stat. 1941, ch. 24, par. 73—9), which authorized municipal authorities to institute appropriate proceedings to enforce zoning ordinances. In 1953 the Act was amended to enlarge the class of plaintiffs and to increase the allowable costs in those actions. (See *Pasfield v. Donovan* (1956), 7 Ill. 2d 563, 131 N.E.2d 504.) The statute again was amended in 1969 to enlarge the types of ordinance violations by adding ordinances regulating unsafe buildings and building codes (Ill. Rev. Stat. 1969, ch. 24, par. 11—13—15) and in 1977 the statute was amended to increase the area within which the private plaintiffs had to reside in order to bring suit (Ill. Rev. Stat. 1977, ch. 24, par. 11—13—15). Thus, it is evident that the legislature intended to expand the scope of the statute to prevent zoning and housing ordinance violations. The defendant's narrow construction, which would limit the actions and parties involved, is inconsistent with this apparent legislative purpose.

■■ We also hold that the Krells were proper parties because their interests were not identical to the City's. The Krells' complaint alleged violations such as electrical wiring inadequacies, shortages of bathrooms, the existence of criminal activities in the defendant's building and zoning violations which were not encompassed by the City's complaint. In addition, the Krells sought recovery for the monetary damages they suffered.

Courts in this State have permitted intervention by private landowners in suits instituted by municipalities to prosecute zoning violations where the private landowners had interests that differed from the interests of the municipality and general public. (See *Anundson v. City of Chicago* (1970), 44 Ill. 2d 491, 256 N.E.2d 1; *Bredberg v. City of Wheaton* (1962), 24 Ill. 2d 612, 182 N.E.2d 742; *Williams v. City of Bloomington* (1969), 108 Ill. App. 2d 307, 247 N.E.2d 446.) The defendant seeks to distinguish these cases because the private parties therein were adjoining landowners and because the landowners were not plaintiffs pursuant to section 11—13—15 of the Illinois Municipal Code. We feel these distinctions are not determinative; rather, we believe these cases are notable for and evidence of our courts' concerns for the protection of the rights and interests of private landowners. In view of this we cannot adopt the defendant's theory that the Krells should be precluded from the judicial process because the City has also acted to enforce its ordinances.

■■ The defendant also argues that the trial court erred in failing to

dismiss the Krells' complaint on the grounds that they lacked clean hands and conspired to destroy the defendant's legitimate enterprise of owning and operating a rental building. The defendant bases this contention on the fact that the Krells were encouraged to bring suit and received financial support during the pretrial phase of their case from the South East Chicago Commission (SECC),[6] a community organization. He also contends that the Krells were the beneficiaries of illegal acts of the SECC, namely, the unauthorized practice of law. We reject this argument and find it unsubstantiated by the record. There is also no merit to this argument because, as stated above, the Krells have a statutory right to bring this action. The fact that they received financial support in order to pursue their legal remedies is not cause for dismissal of their lawsuit.

## VIII

The final issue in this case concerns the cross-appeal by the Krells. After entry of judgment against the defendant, the Krells filed a petition for attorneys' fees in the sum of $19,384.25 for 237 3/4 hours of trial work and costs of $2,235.60 for filing fees, deposition expenses and the like. The Krells argue that the trial judge erroneously denied their petition for attorneys' fees and costs. They claim their right to attorneys' fees and costs is mandatory and rely on section 11—13—15 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 11—13—15), which states in part:

"If an owner or tenant files suit hereunder and the court finds that the defendant has engaged in any of the foregoing prohibited activities, then the court *shall* allow the plaintiff a reasonable sum of money for the services of the plaintiff's attorney. This allowance *shall* be a part of the costs of the litigation assessed against the defendant, and may be recovered as such." (Emphasis added.)

■■ Apart from statute there is no right on the part of a successful party to recover attorneys' fees and the ordinary expenses and burdens of litigation. (*Meyer v. Marshall* (1976), 62 Ill. 2d 435, 343 N.E.2d 479; see *People ex rel. Holland v. DeMichael* (1979), 79 Ill. App. 3d 974, 398 N.E.2d 1138 (recovery of costs).) The first sentence of the provision quoted above became effective in 1969. (1969 Ill. Laws, Pub. Act 76-585.) Prior to that time the award of attorneys' fees was discretionary. (*Anundson v. City of Chicago* (1973), 15 Ill. App. 3d 1032, 305 N.E.2d 376; see Ill. Rev. Stat. 1967, ch. 24, par. 11—13—15.) As a result of the 1969 amendment, substituting "shall" for "may in its discretion," the courts have held that

---

[6] The SECC is a not-for-profit corporation whose purpose is to compile information regarding the incidence of crime and violations of City ordinances and State laws relative to the use of real property in the Oakland, Kenwood, Hyde Park and Woodlawn areas in Chicago. The commission recommends and takes appropriate action based on the information compiled.

the award of attorneys' fees to a successful plaintiff is indeed mandatory. (*Meyer*; cf. *Anundson* (comparison of pre-1969 and post-1969 statutes).) Based on this rationale, the award of costs of the litigation also is mandatory since the second sentence of the quoted portion of section 11—13—15 states the award of attorneys' fees shall be *a part of* the costs assessed against the defendant. Thus, an award of attorneys' fees should not be the only assessment against the defendant.

While the defendant concedes the award of attorneys' fees is normally mandatory, he argues that the Krells should not be granted such an award because they came into equity without clean hands. Since this argument was addressed and rejected in part VII of this opinion, we will not discuss it here. The defendant also questions the reasonableness of the amount of fees requested alleging that much of the work performed on behalf of the Krells was duplicative of the City's efforts.

■■■ It appears from the record that the trial judge based his denial of costs, including attorneys' fees, on the fact that the Krells received financial assistance from the SECC. The SECC paid the pretrial legal fees of over $58,000 but it did not reimburse the Krells for fees and costs incurred as a result of trial. As stated above, the award of attorneys' fees is mandatory. Additionally, an award of fees is a permissible statutory sanction against the defendant to secure compliance with legislative command. (See *Pasfield v. Donovan* (1956), 7 Ill. 2d 563, 131 N.E.2d 504.) It matters not that the SECC encouraged the Krells to bring their lawsuit by providing financial support for their cause, and, therefore, we must reverse the trial court's ruling in this matter.

Although we find error with the trial court's denial of fees and costs, we will not enter judgment in the amount requested by the Krells. The Krells argue that such an award should be entered by this court pursuant to Supreme Court Rule 366(a) (Ill. Rev. Stat. 1979, ch. 110A, par. 366(a)) because there are no material questions of fact relative to fees and costs. We disagree. At the hearing on the Krells' petition for costs and during the present appeal, the defendant raised the argument that the amount sought was unreasonable. The trial judge did not conduct an evidentiary hearing on the issue of reasonableness, specifically indicating that he did not wish to entertain that matter.

Since the amount or reasonableness of costs and attorneys' fees awarded is a matter of discretion with the trial judge (*Fleming v. Dillon* (1938), 370 Ill. 325, 18 N.E.2d 910; *Riordan v. Riordan* (1977), 47 Ill. App. 3d 1019, 365 N.E.2d 492), we remand this cause to the circuit court with directions to hear evidence and determine the reasonable value of services rendered and costs incurred by the Krells' counsel.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed. The order denying an award of costs and attorneys'

fees to the Krells is reversed and the cause remanded with directions to determine the reasonable amount thereof and to enter an award in that amount.

Affirmed in part and reversed and remanded with directions.

RIZZI, P. J., and McNAMARA, J., concur.